### In re LE SUEUR CO-OPERATIVE CO.

(District Court, D. Minnesota, Second Division. April 27, 1911.)

BANKRUPTCY (§ 314*)—CLAIMS—GENERAL CREDITOR.

> Pursuant to the articles of incorporation of the bankrupt and its by-laws, a contract was made between it and the claimant, by which the latter sold to the corporation his stock of merchandise, valued at $5,427.36, and agreed to take in pay therefor excess shares of the stock of the corporation, which, by the terms of the articles of incorporation, its by-laws, and the contract were to remain in the control of the corporation and sold by it: the proceeds to be paid to the claimant. Enough had been sold to pay to claimant $2,391.12, when the corporation went into bankruptcy. *Held*, that claimant under such transaction did not become a general creditor of the corporation so as to authorize proof of his claim for the balance against the bankrupt's estate.
>
> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 469; Dec. Dig. § 314.*]

In Bankruptcy. In the matter of the Le Sueur Co-operative Company. On petition to review a referee's order allowing the claim of J. M. Drozda. Reversed and claim disallowed.

Mr. Geddes, for claimant.
Morphy, Ewing & Bradford, for trustee.

WILLARD, District Judge. This matter is before the court for a review of an order made by the referee on March 28, 1911, allowing a claim of J. M. Drozda in the sum of $2,467.46, with interest. Drozda on August 1, 1907, was the owner of a stock of merchandize at Lonsdale, Le Sueur county, Minn., of the appraised value of $5,-427.36. On that day he made a contract with the promotion bureau of the Right Relationship League by the terms of which the Right Relationship League agreed to organize a co-operative store and shipping company, to be composed of producers and consumers residing in and about Lonsdale, and to cause to be transferred to it all of Drozda's stock of merchandize, according to a proposal made by Drozda of the same day. Drozda, on his part, agreed to pay to the Right Relation-

ship League·a commission of 2½ per cent. upon the valuation of said merchandize, and also agreed to assist in organizing the co-operative company jointly with the representatives of the league. The co-operative company was organized on the 8th of August, 1907, pursuant to the statutes of Minnesota.

Article 5, § 2, of the articles of incorporation, provides as follows:

"Sec. 2. No person shall receive or be entitled to receive any dividend on the capital stock of this corporation in excess of one share thereof, except such persons as may become the owners of excess shares by reason of having same transferred to them by the board of directors as provided in by-laws, and no person shall be entitled to more than one vote at any regular or special meeting or election of this corporation. In case a going business is purchased, acquired or taken over by said corporation, then in that case, the owner or owners of such going business shall have the right and be entitled to a credit for a sufficient amount of excess shares of stock to pay for such going business, and shall be entitled to dividends thereon at the same rate as the other shareholders, but not to exceed six per cent. per annum, said excess shares to be held in trust by the board of directors for the purpose and until they can be disposed of to new members or otherwise. And said owner or owners shall not be entitled· to more than one vote as hereinbefore provided."

On the same day, August 8, 1907, the corporation adopted by-laws. Section 16 (a), art. 6, of the by-laws, is in part as follows:

"Sec. 16 (a). The directors are authorized to purchase established stores and other industries at their proper inventory values, and to pay for same in whole or in part in fully paid up shares of the capital stock of this corporation at par value in accordance with sec. 5, art. IV, of these by-laws, subject to the following conditions:* * *

"Third. When said inventory has been properly taken and the total value of the business to be purchased has been ascertained and agreed upon, shares of capital stock in this corporation at par value to the amount of said inventory may be given as full and final payment for any said business, provided the person or persons, accepting said shares of capital stock for said business, will deposit with the directors of this corporation all of said shares of stock in excess of the equal share $100 worth or the vendor shall at the option of the board of directors take a proper credit on the books of the corporation for all his excess shares being for the amounts of said inventory less the one equal share for himself. Said shares, so deposited, to be held in trust by the directors of this corporation, to be sold as rapidly as possible to new members, in lots of not less or more than $100 worth to any one person or otherwise, and, as the said shares so deposited are sold and paid for, the proceeds of said sales shall be paid to the owners of said shares of capital stock."

On the same day August·8th, a contract was made between Drozda and the company for a sale by him to it of his said stock of merchandize.

Paragraphs 1 and 2 of said contract are as follows:

"1st. As soon as twenty or more persons shall have subscribed for an equal share of $100 each, I hereby agree to turn over to the above-named company my stock of goods and fixtures in accordance with the terms set forth in sec. 16a, art. VI, of the by-laws of your company, as recommended by the Right Relationship League of Minneapolis, Minn., the value of same to be determined by appraisers as provided in said by-laws.

"2nd. Said appraisement to be made and clear bill of sale and possession given by me to your company as above specified, it being hereby understood and agreed that I shall have the right and be entitled to be a credit on the books of the company for a sufficient amount of excess shares of stock to pay

for such stock of goods and fixtures and store property, and shall be entitled to capital stock dividends thereon at the same rate as the other stockholders, but not in excess of the net profit in any one year, said excess shares to be held in trust for me by your board of directors for the purpose and until they can be disposed of to new members or otherwise, but they shall not be issued until fully paid for, nor shall they participate in the purchase dividend."

It was provided in paragraph 5 that the money advanced by Drozda for organizing expenses should be refunded to him out of the first money paid in by subscribers to his department. It was also provided in the sixth paragraph that Drozda should become the manager of the department at Lonsdale, and should continue as such until such time as said excess shares should have been sold. His salary was fixed at $75 a month, and he apparently continued to be the manager, and received that sum as his salary until the bankruptcy of the corporation.

It was further provided in paragraph 7 of said contract that said excess shares should bear their proportion of any loss or damage.

Paragraphs 8 and 9 of said contract are as follows:

"8th. That neither said company, nor board of directors, nor members shall incur or assume any liability by holding said excess shares in trust for me, but shall sell said excess shares as rapidly as possible and before any new shares are sold, unless a new department or store shall be taken over by said company in territory where sales of new shares would not adversely affect the sale of stock in territory within trading distance of Lonsdale.

"9th. That I also agree to do everything in my power to advance the best interests of said company and to assist in organizing this department, jointly, with the representatives of said league."

The stock of merchandize was turned over to the company in pursuance of the contract, Drozda became the manager, and on October 22d a certificate of credit was issued to him, which is as follows:

"Certificate of Credit.

"This is to certify that the board of directors of the Le Sueur County Cooperative Company of Montgomery and state of Minnesota has authorized that there be credited on the books of said company an amount equal to the par value of fifty and $94/100$ (5.094.18) shares of its capital stock in the name of J. M. Drozda of Lonsdale, Minn., said credit to be held in trust for said J. M. Drozda for the purpose and until it can be disposed of to new members or otherwise, and as additional shares in the Lonsdale department of said company are sold and paid for, the proceeds of said sales shall be paid to said J. M. Drozda in the reduction of the above credit.

"It is further understood and agreed that the amount so held in trust for said J. M. Drozda shall be entitled to draw interest at the same rate as that drawn by shareholders as capital stock dividends, but not to exceed six (6%) per cent. per annum, nor in excess of the net profits in any year, nor shall said J. M. Drozda be entitled to more than one vote at any election or meeting of said company, all these provisions being in accordance with the by-laws of said company.

"Dated at Montgomery, state of Minnesota, this 22d day of October, A. D. 1907.                    Le Sueur County Co-operative Company.
                         "By H. M. Meyer, President.
                         "By Benjamin Richter, Secretary.

"I herewith approve and accept the above provisions and agreements this ———— day of ———— A. D. 190— at ————.
                                                    "————."

From time to time thereafter, he was paid from the sales of such excess shares and from dues the sum of $2,391.12. He also received from the corporation notes of various persons to whom stock had been sold on credit amounting to $2,200. These notes, however, he refused to accept, on the ground that the makers were not solvent, and the notes were afterwards taken back by the manager of the company. The company having gone into bankruptcy, Drozda claims that he is a creditor, and not a stockholder; while the trustee claims that he is a stockholder, and not a creditor.

The question now presented is not whether by the contracts and documents referred to Drozda became a stockholder of the company, and assumed all the obligations of a stockholder to the extent of the excess shares mentioned in the documents. The question here is, rather, Did he become a general creditor of the corporation to the extent of the value of the merchandise turned over by him to it, so that he is now entitled to prove his claim against it for the purchase price thereof? If Drozda had expressly agreed to turn over his merchandize to the corporation, and to receive in payment therefor only the amount of money which might be received by the corporation from the sale of the excess shares assigned to him by the company, and had expressly agreed never to press any claim against the corporation for any balance remaining unpaid, by reason of the failure of the company to sell all of said shares, there could be no doubt but that such a contract would have been valid, that it would have been binding upon Drozda, and, the company having gone into bankruptcy, that he could not have appeared against it as a general creditor.

The papers in the case do not show that he expressly agreed to this; but they do show that he impliedly made such an agreement. This agreement is necessarily to be inferred from the contract which he made. An examination of the documents in the case shows very plainly what the plan of operations was. All of the separate papers are consistent one with the other, and indicate no change in such plan. The first agreement made before the company was organized between Drozda and the Right Relationship League, by which he employed them to dispose of the stock of merchandize, declared that the sale should be made in accordance with the proposal of the same day. The articles of incorporation expressly provided that, when a business such as Drozda's was purchased, the seller should be entitled to credit for "excess shares of stock to pay for such going business." The contract between the parties provided that the stock of goods and fixtures should be turned over to the company in accordance with the provisions of section 16 (a), art. 6, of the by-laws.

Counsel in this case seem to consider that that section provided for two methods of paying for such a business as Drozda's. It, however, in effect, provides for only one. It authorizes the directors in the first paragraph to purchase stores and other industries, and to pay for the same in whole or in part in fully paid-up shares of the capital stock of the corporation. After the inventory has been taken, and the value of the business ascertained, shares of the capital stock may be actually made out, and issued to the amount of the inventory, and these may

be given as the full and final payment for the business. But these same shares, if actually made out and delivered, must be at once deposited by the seller with the directors. By the terms of that article, the directors instead of actually making out the certificates, issuing them and then requiring the seller to at once deposit them with the directors, have the option of giving to the seller proper credit on the books of the corporation for all of his excess shares. If the shares are actually issued and then deposited, or if a credit is taken for the excess shares, without their issue and deposit, the directors in either case have the right, and it is their duty, to sell such shares and pay the proceeds to the seller of the merchandize. In no event do the articles or by-laws authorize the directors to issue stock and deliver it to the seller, so that he can carry it away and treat it as his own. By the terms of the articles and the by-laws, the excess shares given in payment for merchandize must always remain under the control of the directors, and they must be sold by them. In no case has the seller of the merchandize any power over the excess shares. The contract made between the parties on the 8th of August expressly states that the stock of goods and fixtures is to be taken over in accordance with section 16 (a), art. 6, of the by-laws. It also expressly states that, when a clear bill of sale and possession of the stock is given by Drozda to the company, he shall be entitled to credit on the books of the company for a sufficient amount of excess shares to pay for the goods. It also provides that the excess shares shall be held in trust for him by the board of directors of the corporation until they can be disposed of to new members. These documents, viz., the articles, the by-laws, and the contract, as has been said, are all consistent with each other. They all provide that what Drozda shall receive for his merchandize is not money or the obligation of the company to pay money. What he did agree to receive was what the company might realize from the sale of excess shares which were credited to him at the time of the transfer by him of the possession of the goods. In the eighth paragraph of the contract he requires the company to sell the excess shares credited to him as rapidly as possible and before any new shares are sold.

It is said in the brief of counsel for the claimant that the transaction shows a sale of merchandize by one person and a purchase by another, and that such a transaction implies a payment by the purchaser, or an obligation to pay, and that, therefore, the relation of debtor and creditor is at once established. But that contention overlooks entirely the fact that, when the merchandize was turned over to the company by Drozda, he expressly agreed that he would take his pay in a certain way. What is there in any of the papers which indicates if the company did not sell the excess shares that Drozda was to become a general creditor? The very complicated scheme for the organization of this company and the very voluminous by-laws carefully provide for what shall be done with the profits, but, like most other plans of this character, they make no provision for what shall be done in case of a loss.

There is nothing anywhere in any of these papers which expressly states what shall be the relation of Drozda to the company if it does not sell all of the shares. It would have been a very easy matter for Drozda to have inserted in his proposal a provision that, if the company did not sell the shares, he should stand as a general creditor; but no such provision is anywhere found in any of the papers. On the contrary, in section 7 of the contract, it is expressly provided that the excess shares assigned to Drozda shall bear their proportion of any loss or damage. If this means anything, it means that Drozda, who was entitled to what such excess shares might produce, must be the person who was to suffer such loss or damage.

The evidence shows that Drozda himself was apparently the moving spirit in organizing this company, or at least that department of the company which was located at Lonsdale. He employed the Right Relationship League on the 1st of August to sell his stock of merchandize to such a company, and agreed to assist in its organization. The persons subscribing to the capital stock of the company must have done so in reliance upon the by-laws, and must have believed that Drozda was interested in procuring new members to the extent of his excess shares. The more new members secured the more prosperous would be the company, and less the liability of each subscriber. It is doubtful if any subscriber could have been procured upon the theory that Drozda, the organizer of the Lonsdale department, and the seller to the company of his own stock of merchandize, was a creditor of the company, and for the value of such stock of merchandize could at any time maintain a suit against the company. He became the manager of the department at a salary of $75 a month, and, so far as appears, remained such manager until the bankruptcy of the company.

It is not necessary to consider here the effect to be given to that provision of section 3075 of the Revised Laws of 1905 of Minnesota, which says that no member of a company like this shall own shares of a greater par value than one thousand dollars.

As has been said before, the question whether Drozda became a stockholder in the company or not in respect of these excess shares is not here decided. The only thing decided is that he agreed to take his pay for the merchandize in a certain way, and did not by his contract with the company become its general creditor.

The order of the referee is reversed, and the claim of Drozda is disallowed.